Filed 7/31/23  Ahlman v. ForwardLine Financial CA2/3
Opinion on remand from U.S. Supreme Court

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| BRANDON AHLMANN, | B304367 |
| Plaintiff and Respondent, | Los Angeles County |
| | Super. Ct. No. |
| v. | 19VECV01352 |
| FORWARDLINE FINANCIAL, LLC, et al., | |
| Defendants and Appellants. | |

APPEAL from an order of the Superior Court of Los Angeles County, Theresa M. Traber, Judge.  Affirmed in part, reversed in part.

Sacro & Walker and Lisa M. Burnett for Defendants and Appellants.

Justice Law Corporation and Talia Lux for Plaintiff and Respondent.

———————————

Defendants ForwardLine Financial, LLC and ForwardLine Payment Services, LLC (ForwardLine) appeal an order denying their motion to compel arbitration of plaintiff Brandon Ahlmann's claim to recover civil penalties under the Private Attorneys General Act of 2004 (PAGA) (Lab. Code, § 2698 et seq.).[1]  The relevant arbitration clause requires plaintiff to arbitrate "any dispute of any nature between you and the Company" "arising out of or relating to your employment with the Company" and specifies that "[e]ach party may pursue arbitration solely in an individual capacity, and not as a representative or class member in any purported class or representative proceeding."  In an earlier opinion, a panel of this court affirmed the order, applying our Supreme Court's holding in *Iskanian v. CLS Transportation Los Angeles, LLC* (2014) 59 Cal.4th 348 (*Iskanian*) to conclude the arbitration clause did not cover plaintiff's claim because an action to recover civil penalties under PAGA is a representative proceeding arising out of a dispute between the employer and the state that cannot be waived by contractual agreement.

In *Viking River Cruises, Inc. v. Moriana* (2022) __ U.S. __ [142 S.Ct. 1906] (*Viking River*), the United States Supreme Court rejected the portion of *Iskanian* that prohibited employers from compelling arbitration of an employee's individual PAGA claims, including the part of *Iskanian* that held a PAGA action lies outside the coverage of the Federal Arbitration Act (FAA) because the action " 'is not a dispute between an employer and an employee arising out of their contractual relationship,' but 'a dispute between an employer and the *state*.' "  (*Viking River*, 142 S.Ct. at p. 1919, fn. 4, quoting *Iskanian, supra,* 59 Cal.4th

---

[1]     Statutory references are to the Labor Code, unless otherwise designated.

at p. 387.)  Because plaintiff's individual PAGA claim is arbitrable under *Viking River*, we must reverse the order to the extent it denies ForwardLine its contractual right to compel arbitration of the claim.

As for plaintiff's nonindividual PAGA claims (i.e., the claims plaintiff asserts on behalf of his fellow aggrieved employees), those claims remain subject to our state law rule against contractual PAGA waivers.  (See *Viking River, supra,* 142 S.Ct. at pp. 1924–1925.)  Nonetheless, the *Viking River* majority suggested a plaintiff's nonindividual claims should be dismissed after her individual claim is ordered to arbitration because, in the majority's view, "PAGA provides no mechanism to enable a court to adjudicate nonindividual PAGA claims once an individual claim has been committed to a separate proceeding."  (*Id*. at p. 1925.)[2]  Our Supreme Court has now

---

[2]    Justice Barrett, with whom the Chief Justice and Justice Kavanaugh joined, declined to support dismissal of the plaintiff's nonindividual PAGA claims.  (*Viking River, supra,* 142 S.Ct. at p. 1926 (conc. opn. of Barrett, J.) [Justice Barrett concurring in part and in the judgment, declining to join part IV, which "addresses disputed state-law questions as well as arguments not pressed or passed upon in this case"].)  Justice Sotomayor, while joining the court's opinion in full, recognized the dismissal might well advance an incorrect interpretation of California law.  (*Id*. at p. 1925 (conc. opn. of Sotomayor, J.) ["[I]f this Court's understanding of state law is wrong, California courts, in an appropriate case, will have the last word."].)  Justice Thomas dissented from the entire opinion, adhering to his long-held view that the FAA does not apply to state court proceedings.  (*Id*. at p. 1926 (dis. opn. of Thomas, J.), citing *Allied-Bruce Terminix Cos. v. Dobson* (1995) 513 U.S. 265, 285–297 (dis. opn. of Thomas, J.).)

rejected that interpretation. Under our state law as interpreted by our high court, where "a plaintiff has brought a PAGA action comprising individual and non-individual claims, an order compelling arbitration of the individual claims does not strip the plaintiff of standing as an aggrieved employee to litigate claims on behalf of other employees under PAGA." (*Adolph v. Uber Technologies, Inc.* (July 17, 2023, S274671) __ Cal.4th __ [2023 WL 4553702].) Plaintiff has standing to litigate his nonindividual PAGA claims in the trial court.

## FACTS AND PROCEDURAL HISTORY

Plaintiff's operative first amended complaint asserts a single cause of action, on behalf of plaintiff and other aggrieved ForwardLine employees, for the recovery of civil penalties under PAGA, based on ForwardLine's alleged violation of the Labor Code's wage-and-hour provisions. The complaint alleges plaintiff notified the Labor and Workforce Development Agency (LWDA)—the agency that enforces California's labor laws—of his intent to seek PAGA penalties, and the LWDA did not intervene within the 65-day notice period. (See § 2699.3, subd. (a)(2)(A).)

ForwardLine moved to compel arbitration of the claim under an arbitration clause in plaintiff's signed offer letter.[3]

---

[3] ForwardLine also purported to base its motion on a section of its employee handbook that referenced the arbitration clause in plaintiff's offer letter. However, the acknowledgement that plaintiff signed upon receiving the handbook states, "It is specifically agreed that the Handbook is for informational purposes only and that it is not a contract for, or guarantee of, employment or continuing employment." Thus, by its terms, the handbook is not a contract under which arbitration could be compelled. Even if it were, the parties agree the handbook's relevant section merely complements and is at most coextensive

4

The clause states:

> "While we of course hope that your employment relationship with the Company will be mutually satisfying and rewarding, we recognize that disputes can sometimes occur. Therefore, as a condition of your employment, the Company requires that you hereby agree that any and all disputes, claims, or proceedings between you and the Company arising out of or relating to your employment with the Company, the nature, terms, or enforceable [*sic*] of this letter agreement, or any dispute of any nature between you and the Company shall be settled by a binding and final arbitration held before a single arbitrator from the Judicial Arbitration Mediation Service, Inc. ('JAMS'). Arbitration shall be held in the County of Los Angeles, California, and shall be pursuant to the laws of the State of California. Each party may pursue arbitration solely in an individual capacity, and not as a representative or class member in any purported class or representative proceeding. The arbitrator may not consolidate more than one person's or entity's claims, and may not otherwise preside over any form of representative or class proceeding. The arbitrator shall also have the power to impose any sanction against any party

with the arbitration clause in plaintiff's signed offer letter. We therefore focus exclusively on the clause in the offer letter.

5

permitted by California law.  The arbitration award shall be final.  Judgment on any arbitration award may be entered into [*sic*] any court in the County of Los Angeles."

The trial court denied the motion to compel arbitration, finding the operative complaint alleged "only 'public' claims for civil remedies pursuant to PAGA," and concluding such a claim "may not be sent to arbitration pursuant to [a] pre-litigation arbitration clause[ ]."

This court affirmed the order in a nonpublished opinion, *Ahlmann v. ForwardLine Financial, LLC* (Nov. 12, 2021, B304367) [nonpub. opn.].  Applying *Iskanian*, we held "plaintiff's claim to recover civil penalties under PAGA lies outside the coverage of the arbitration clause because the claim is not a dispute 'between [plaintiff] and the Company'—it is a dispute between 'the Company' and the state."  (*Ahlmann v. ForwardLine Financial, LLC, supra*, B304367; see *Iskanian, supra,* 59 Cal.4th at pp. 386–387 ["a PAGA claim lies outside the FAA's coverage because it is not a dispute between an employer and an employee arising out of their contractual relationship"; rather, "[i]t is a dispute between an employer and the *state*, which alleges directly or through its agents—either the [LWDA] or aggrieved employees —that the employer has violated the Labor Code"].)

The California Supreme Court denied ForwardLine's petition for review.  (*Ahlmann v. ForwardLine Financial, LLC* (Feb. 23, 2022, S272381).)  However, the United States Supreme Court granted ForwardLine's petition for writ of certiorari and, thereafter, vacated this court's judgment and remanded the matter for further consideration in light of *Viking River*.

(*Ahlmann v. ForwardLine Financial, LLC, supra*, B304367, cert. granted *sub nom. ForwardLine Financial, LLC v. Ahlmann,* Dec. 12, 2022, No. 22-75, __ U.S. __ [143 S.Ct. 522].)

**DISCUSSION**

**1.** *PAGA and* **Iskanian**

In *Iskanian*, our Supreme Court examined two related questions:  (1) whether arbitration agreements waiving the right to prosecute representative PAGA actions in any forum are unenforceable under state law, and (2) whether the FAA preempts a state law rule prohibiting such waivers.  (*Iskanian, supra,* 59 Cal.4th at pp. 382–384.)  The plaintiff in *Iskanian* had signed an arbitration agreement providing that all claims arising out of his employment were to be submitted to arbitration and that the parties would not assert class or representative claims in arbitration.  (*Id.* at pp. 360–361.)  He sued his employer, asserting wage-and-hour class action claims and PAGA claims seeking statutory penalties for Labor Code violations.  (*Id.* at p. 361.)  The trial court granted the employer's motion to compel individual arbitration of the PAGA claim and the reviewing court affirmed, reasoning the plaintiff was contractually obligated to arbitrate the PAGA claim and was barred from litigating it in a representative capacity.  (*Id.* at pp. 361–362.)  Our Supreme Court reversed.

Addressing the first issue, the *Iskanian* court held predispute waivers that require employees to relinquish the right to assert a representative PAGA claim in any forum are contrary to public policy and unenforceable as a matter of state law because they "harm the state's interests in enforcing the Labor Code and in receiving the proceeds of civil penalties used to deter violations."  (*Iskanian, supra,* 59 Cal.4th at p. 383.)

7

As our high court explained, the Legislature enacted PAGA to enhance the state's enforcement of labor laws by authorizing aggrieved employees, acting as private attorneys general, to recover civil penalties for violations, with the understanding that the enforcement agencies would retain primacy over private enforcement efforts.  (*Id.* at p. 379.)  To maintain state oversight, PAGA requires the employee to provide the LWDA with written notice of the alleged Labor Code violations and authorizes an employee to pursue a PAGA claim in court only if the agency does not intervene.  (*Id.* at p. 380; see § 2699.3, subd. (a)(2).)  Of the civil penalties recovered in a representative PAGA action, 75 percent goes to the LWDA, leaving the remaining 25 percent for the "aggrieved employees."  (*Iskanian,* at p. 380; see § 2699, subd. (i).)

Because "the Legislature's purpose in enacting the PAGA was to augment the limited enforcement capability of the [LWDA] by empowering employees to enforce the Labor Code as representatives of the Agency," the *Iskanian* court reasoned "an agreement by employees to waive their right to bring a PAGA action serves to disable one of the primary mechanisms for enforcing the Labor Code."  (*Iskanian, supra,* 59 Cal.4th at p. 383.)  And, because "such an agreement has as its 'object, . . . indirectly, to exempt [the employer] from responsibility for [its] own . . . violation of law,' " our Supreme Court held "it is against public policy and may not be enforced."  (*Ibid.*, quoting Civ. Code, § 1668.)

Turning to the second issue, the *Iskanian* court held the FAA does not preempt this state law rule invalidating PAGA waivers because "the FAA aims to ensure an efficient forum for the resolution of *private* disputes, whereas a PAGA action is a

8

dispute between an employer and the state Labor and Workforce Development Agency." (*Iskanian, supra,* 59 Cal.4th at p. 384.) Our high court explained: "Simply put, a PAGA claim lies *outside the FAA's coverage* because it is not a dispute between an employer and an employee arising out of their contractual relationship. It is a dispute between an employer *and the state*, which alleges directly or through its agents—either the Agency or aggrieved employees—that the employer has violated the Labor Code." (*Id.* at pp. 386–387, italics added.) The *Iskanian* court emphasized that a PAGA claim is " ' "fundamentally a law enforcement action designed to protect the public and not to benefit private parties" ' " and that " 'an aggrieved employee's action under the [PAGA] functions as a substitute for an action brought by the government itself.' " (*Id.* at pp. 381, 387.) "The government entity on whose behalf the plaintiff files suit is always the real party in interest in the suit," and this is confirmed by "[t]he fact that any judgment in a PAGA action is binding on the government." (*Id.* at pp. 382, 387.)

Additionally, the *Iskanian* court addressed the employer's argument that its arbitration agreement should be upheld because the agreement prohibited only representative claims —not individual PAGA claims for Labor Code violations that an employee suffered. (*Iskanian, supra,* 59 Cal.4th at p. 383.) In rejecting that argument, our high court said it was irrelevant "whether or not an individual claim is permissible under the PAGA, [because] a prohibition of *representative* claims frustrates the PAGA's objectives." (*Id.* at p. 384.) Critically, California appellate courts have interpreted this aspect of *Iskanian* as prohibiting splitting PAGA claims into individual and

9

nonindividual components to permit arbitration of the individual claims. (*Nickson v. Shemran, Inc.* (2023) 90 Cal.App.5th 121, 128.)

**2. Viking River**

In *Viking River*, the United States Supreme Court considered whether the FAA preempts the *Iskanian* rule invalidating contractual waivers of the right to assert PAGA claims.[4] (*Viking River, supra,* 142 S.Ct. at p. 1913.) The court began by observing the term " 'representative' " is used in "two distinct ways" in reference to PAGA actions. (*Id.* at p. 1916.) In one sense, "PAGA actions are 'representative' in that they are brought by employees acting as representatives—that is, as agents or proxies—of the State." (*Ibid.*) But in another sense, PAGA claims also are " 'representative' when they are predicated on code violations sustained by *other employees.*" (*Ibid.*, italics added.) Having drawn this distinction, the *Viking River* court determined a claim "based on code violations suffered by the plaintiff," as opposed to a claim predicated on violations suffered by other employees, should be understood as an " 'individual PAGA claim.' " (*Ibid.*)

*Iskanian*, the *Viking River* court explained, articulates two rules governing contractual waivers of PAGA claims: "*Iskanian*'s principal rule prohibits waivers of 'representative' PAGA claims in the first sense. That is, it prevents parties

_____

[4] Under the FAA, a "written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising . . . shall be valid, irrevocable, and enforceable . . . ." (9 U.S.C. § 2.) The statute embodies "a liberal federal policy favoring arbitration." (*Moses H. Cone Memorial Hosp. v. Mercury Const.* (1983) 460 U.S. 1, 24 (*Moses H. Cone*).)

from waiving *representative standing* to bring PAGA claims in a judicial or arbitral forum. But *Iskanian* also adopted a secondary rule that invalidates agreements to separately arbitrate or litigate 'individual PAGA claims for Labor Code violations that an employee suffered,' on the theory that resolving victim-specific claims in separate arbitrations does not serve the deterrent purpose of PAGA." (*Viking River, supra,* 142 S.Ct. at pp. 1916–1917.)

The *Viking River* court held the principal rule of *Iskanian* —prohibiting waivers of an employee's right to bring a PAGA action—does not conflict with the FAA, because the FAA is concerned with the forum in which disputes are resolved, not the substantive law that resolves them. (*Viking River, supra,* 142 S.Ct. at p. 1919.) Thus, even after *Viking River*, a contractual waiver of the right to prosecute PAGA claims remains unenforceable as against California public policy.

However, the *Viking River* court reasoned the secondary rule of *Iskanian*—invalidating agreements to separately arbitrate or litigate individual PAGA claims—is procedural, and the FAA preempts this rule. (*Viking River, supra,* 142 S.Ct. at p. 1924.) As the court explained, the conflict between PAGA's procedural structure and the FAA derives from the state statute's built-in mechanism of claim joinder, which "permits 'aggrieved employees' to use the Labor Code violations they personally suffered as a basis to join . . . any claims that could have been raised by the State in an enforcement proceeding," including those of other aggrieved employees. (*Id.* at p. 1923.) By invalidating agreements to arbitrate only individual PAGA claims, the secondary rule of *Iskanian* "prohibits parties from contracting around this joinder device," and thus "unduly

11

circumscribes the freedom of parties to determine 'the issues subject to arbitration' and 'the rules by which they will arbitrate,' " as guaranteed under the FAA. (*Viking River,* at p. 1923.) Thus, the *Viking River* court held "the FAA preempts the rule of *Iskanian* insofar as it precludes division of PAGA actions into individual and non-individual claims through an agreement to arbitrate." (*Id*. at p. 1924.)

In reaching this conclusion, the *Viking River* court rejected a core holding of *Iskanian*—"that a PAGA action lies outside the FAA's coverage entirely because [the FAA] is limited to controversies '*arising out* of' the contract between the parties," while "a PAGA action 'is not a dispute between an employer and an employee arising out of their contractual relationship,' " but " 'a dispute between an employer and the *state*.' " (*Viking River, supra,* 142 S.Ct. at p. 1919, fn. 4, quoting *Iskanian, supra,* 59 Cal.4th at p. 387.) The court reasoned "disputes resolved in PAGA actions satisfy [the arising out of] requirement" because "[t]he contractual relationship between the parties is a but-for cause of any justiciable legal controversy between the parties under PAGA, and 'arising out of' language normally refers to a causal relationship." (*Viking River*, at p. 1919, fn. 4.) Moreover, nothing in the FAA "categorically exempts" claims belonging to sovereigns from the scope of the federal statute. (*Ibid*.)

3.    **Viking River *Compels Reversal of the Order***

In view of *Viking River*, we are compelled to reverse the order to the extent it denies ForwardLine its right under the arbitration clause to compel arbitration of plaintiff's individual PAGA claim. Critically, the United State Supreme Court not only held the FAA preempts the rule that PAGA claims cannot be divided into individual and nonindividual claims, but the

high court also expressly rejected the part of *Iskanian* that held a PAGA action lies outside the coverage of the FAA because the action " 'is not a dispute between an employer and an employee arising out of their contractual relationship,' but 'a dispute between an employer and the *state*.' " (*Viking River*, *supra*, 142 S.Ct. at p. 1919, fn. 4, quoting *Iskanian, supra,* 59 Cal.4th at p. 387.) Because that part of the *Iskanian* opinion was essential to this court's earlier holding that the arbitration clause did not cover plaintiff's PAGA action (see *Ahlmann v. ForwardLine Financial, LLC*, *supra*, B304367), we now are compelled to conclude plaintiff's individual PAGA claim is subject to the parties' agreement to arbitrate all claims "arising out of or relating to [plaintiff's] employment with the Company." (See also *DIRECTV, Inc. v. Imburgia* (2015) 577 U.S. 47, 53 ["The [FAA] is a law of the United States, and [*Viking River*] is an authoritative interpretation of that Act."].)

Plaintiff does not dispute that *Viking River* negates an essential ground for our earlier opinion affirming the order. Instead, he argues *Viking River* does not apply because there is no indication in his offer letter or the arbitration clause that the FAA would govern the parties' agreement to arbitrate. In the alternative, plaintiff argues *Viking River* is inapposite because, unlike the agreement in that case, his offer letter does not have a severability clause. Neither contention is persuasive.

a. *The FAA governs the parties' agreement to arbitrate*

The FAA was enacted to "overrule the judiciary's longstanding refusal to enforce agreements to arbitrate" (*Dean Witter Reynolds, Inc. v. Byrd* (1985) 470 U.S. 213, 219–220), and to place arbitration agreements " 'upon the same footing as other contracts' " (*Scherk v. Alberto-Culver Company* (1974) 417 U.S.

13

506, 510–511).  (See *Mount Diablo Medical Center v. Health Net of California, Inc.* (2002) 101 Cal.App.4th 711, 717 (*Mount Diablo*).)  The federal statute provides for enforcement of arbitration provisions in any contract evidencing a transaction involving interstate commerce (9 U.S.C. § 2) and establishes that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration" (*Moses H. Cone, supra,* 460 U.S. at pp. 24–25).  (Accord *Cronus Investments, Inc. v. Concierge Services* (2005) 35 Cal.4th 376, 386 (*Cronus Investments*).)

" 'Commerce' for purposes of FAA coverage 'is to be broadly construed so as to be coextensive with congressional power to regulate under the Commerce Clause.' " (*Erickson v. Aetna Health Plans of California, Inc.* (1999) 71 Cal.App.4th 646, 651; *Citizens Bank v. Alafabco, Inc.* (2003) 539 U.S. 52, 56 [the FAA reflects the "broadest permissible exercise of Congress' Commerce Clause power"].)  Here, the record shows "ForwardLine is a nationwide lender that receives applications for loans online and transfers funds to small businesses throughout the country." Thus, its business has the requisite nexus to interstate commerce, and the FAA presumptively applies to the parties' arbitration agreement.  (See *Citizens Bank*, at pp. 57–58 [given "broad impact of commercial lending on the national economy," company performing purely intrastate debt-restructuring nonetheless had requisite connection with interstate commerce under FAA].)

"State laws that apply to contracts generally can be applied to arbitration agreements, but 'courts may not . . . invalidate arbitration agreements under state laws applicable *only* to arbitration provisions.' " (*Mount Diablo, supra,* 101 Cal.App.4th at p. 718, quoting *Doctor's Associates, Inc. v. Casarotto* (1996)

14

517 U.S. 681, 687.)  Consistent with this principle, the United States Supreme Court has recognized "[a]rbitration under the [FAA] is a matter of consent, not coercion, and parties are generally free to structure their arbitration agreements as they see fit.  Just as they may limit by contract the issues which they will arbitrate [citation], so too may they specify by contract the rules under which that arbitration will be conducted.  Where . . . the parties have agreed to abide by state rules of arbitration, enforcing those rules according to the terms of the agreement is fully consistent with the goals of the FAA, even if the result is that arbitration is stayed where the [FAA] would otherwise permit it to go forward."  (*Volt Info. Sciences v. Bd. of Trustees* (1989) 489 U.S. 468, 479; see *id.* at p. 470 [FAA did not preempt application of California statute where choice-of-law provision stated the contract " 'shall be governed by the law of the place where the Project is located,' " which was California].)

However, when an agreement is ambiguous as to what law will govern an arbitration agreement otherwise covered by the FAA, " 'due regard must be given to the federal policy favoring arbitration, and ambiguities as to the scope of the arbitration clause itself resolved in favor of arbitration.' "  (*Mastrobuono v. Shearson Lehman Hutton, Inc.* (1995) 514 U.S. 52, 62 (*Mastrobuono*).)  Thus, in *Mastrobuono*, where the parties' contract contained a choice-of-law provision stating the contract " 'shall be governed by the laws of the State of New York' " but made no express reference to punitive damages, the Supreme Court held the FAA preempted New York decisional law authorizing courts, but not arbitrators, to award punitive damages.  (*Id.* at pp. 54–55, 58–59, 63–64.)  The *Mastrobuono* court determined the choice-of-law clause at most "introduce[d]

15

an ambiguity into an arbitration agreement that would otherwise allow punitive damages awards," and, given the FAA policy favoring arbitration, "the best way to harmonize the choice-of-law provision with the arbitration provision [was] to read 'the laws of the State of New York' to encompass substantive principles that New York courts would apply, but not to include special rules limiting the authority of arbitrators." (*Id.* at pp. 62–64.)

Applying these federal authorities, our state courts have articulated a two-part test for determining whether a choice-of-law clause incorporates state arbitration procedures in lieu of the FAA. First, a court must determine whether "the language of the choice-of-law clause is broad enough to include state law on the subject of arbitrability." (*Mount Diablo, supra,* 101 Cal.App.4th at p. 724.) If the language is broad enough, the second step requires the court "to determine whether the particular provision of state law in question is one that reflects a hostility to the enforcement of arbitration agreements that the FAA was designed to overcome." (*Ibid.*, citing *Mastrobuono, supra,* 514 U.S. 52; accord *Cronus Investments, supra,* 35 Cal.4th at pp. 387, 392–393.) When the state law rule reflects hostility to arbitration, "the choice-of-law clause should not be construed to incorporate such a provision, at least in the absence of unambiguous language in the contract making the intention to do so unmistakably clear." (*Mount Diablo*, at p. 724.)

Contrary to plaintiff's contention, the choice-of-law clause in his offer letter is nowhere near broad enough to supplant the FAA's mandates regarding arbitrability. *Warren-Guthrie v. Health Net* (2000) 84 Cal.App.4th 804 (*Warren-Guthrie*) is instructive. The contract in that case contained an arbitration provision and choice-of-law clause stating, " 'All Arbitration

16

shall be conducted in accordance with the California Code of Civil Procedure, commencing with Section 1280.' " (*Id*. at p. 815.) In holding the FAA, rather than California procedural law, governed the subject of arbitrability, the reviewing court emphasized there was "no express language indicating that California law shall be determinative as to whether or not arbitration is required," and the choice-of-law provision expressly "limit[ed] the scope of California law to that law pertaining to the *manner in which the arbitration is to be conducted*." (*Id.* at pp. 815–816, italics added, disapproved on other grounds by *Cronus Investments, supra,* 35 Cal.4th at p. 393, fn. 8.)

Plaintiff contends the FAA does not govern the parties' agreement to arbitrate because his offer letter states that " 'Arbitration shall be held in the County of Los Angeles, California, and shall be pursuant to the laws of the State of California.' " But like the choice-of-law clause in *Warren-Guthrie*, this provision is expressly limited to the law that will apply *in the arbitration*—not whether plaintiff's claims must be arbitrated. (See *Warren-Guthrie, supra,* 84 Cal.App.4th at pp. 815–816.) As for the claims to be arbitrated, the agreement broadly states that "any and all disputes, claims, or proceedings between you and the Company arising out of or relating to your employment with the Company, the nature, terms, or enforceab[ility] of this letter agreement, or any dispute of any nature between you and the Company shall be settled by a binding and final arbitration held before a single arbitrator from the Judicial Arbitration Mediation Service, Inc." without any reference to California law. (Cf. *Mount Diablo, supra,* 101 Cal.App.4th at p. 722 [choice-of-law clause providing that " 'the validity, construction, interpretation and enforcement of this

17

Agreement' " shall be governed by California law broad enough to incorporate state law procedural rules governing arbitration].)

Even if the clause was broad enough to displace the FAA, plaintiff's attempt to invoke California law to avoid application of *Viking River* plainly implicates the sort of hostility to the enforcement of arbitration agreements that requires "unambiguous language in the contract making the intention to [apply state law] unmistakably clear." (*Mount Diablo, supra,* 101 Cal.App.4th at p. 724.) As discussed, *Viking River* declared the secondary rule of *Iskanian* preempted because that rule "prohibits parties from contracting around [PAGA's] joinder device," and thus "unduly circumscribes the freedom of parties to determine 'the issues subject to arbitration' and 'the rules by which they will arbitrate,' " as guaranteed under the FAA. (*Viking River*, *supra*, 142 S.Ct. at p. 1923.) To contract around FAA preemption and incorporate a rule that circumscribes the freedom to arbitrate individual PAGA claims, unmistakable clarity was required. The choice-of-law clause in plaintiff's offer letter simply does not meet this standard.

b.  *The restriction on arbitrating representative actions can be limited in accordance with* Viking River *notwithstanding the absence of a severability clause*

As discussed, in *Viking River*, the United States Supreme Court held the FAA does not preempt the principal rule of *Iskanian* prohibiting wholesale waivers of an employee's right to bring a PAGA action, but the federal statute does preempt the secondary "rule of *Iskanian* insofar as it precludes division of PAGA actions into individual and non-individual claims through an agreement to arbitrate." (*Viking River, supra,* 142 S.Ct. at p. 1924.) Because the parties' agreement "purported

18

to waive 'representative' PAGA claims," the Supreme Court recognized it remained "invalid" under *Iskanian* to the extent it could be "construed as a wholesale waiver of PAGA claims." (*Viking River*, at p. 1924.) However, the court noted the parties' agreement contained a "severability clause," stipulating "that if the waiver provision is invalid in some respect, any 'portion' of the waiver that remains valid must still be 'enforced in arbitration.' " (*Id.* at p. 1925.) Based on this clause, the court held, "Viking was entitled to enforce the agreement insofar as it mandated arbitration of [the plaintiff's] *individual* PAGA claim." (*Ibid.*, italics added.)

Like the agreement in *Viking River*, the arbitration clause in plaintiff's offer letter can be construed as a wholesale waiver of PAGA claims insofar as it requires the parties to submit "any and all disputes, claims, or proceedings" to arbitration, while prohibiting the arbitrator from "presid[ing] over any form of representative or class proceeding." Plaintiff correctly asserts this provision remains invalid under the principal rule of *Iskanian* and the United States Supreme Court's holding in *Viking River*. He further contends he cannot be compelled to arbitrate his individual PAGA claim because, unlike the agreement in *Viking River*, his offer letter does not contain a severability clause. We disagree with this latter contention.

Civil Code section 1599 provides: "Where a contract has several distinct objects, of which one at least is lawful, and one at least is unlawful, in whole or in part, the contract is void as to the latter and valid as to the rest." "A severability clause" like the one in *Viking River* "merely states existing law" codified in Civil Code section 1599 and is unnecessary to invoke our state's " 'liberal principle' " of severability. (*Ulene v. Jacobson* (1962)

209 Cal.App.2d 139, 142, quoting *Jackson v. Shawl* (1865) 29 Cal. 267, 272.)

In *Keene v. Harling* (1964) 61 Cal.2d 318 (*Keene*), our Supreme Court elaborated on how the principle codified in Civil Code section 1599 operates in practice: " 'Whether a contract is entire or separable depends upon its language and subject matter, and this question is one of construction to be determined by the court according to the intention of the parties. If the contract is divisible, the first part may stand, although the latter is illegal. [Citation.]' [Citations.] It has long been the rule in this state that ' "When the transaction is of such a nature that the good part of the consideration can be separated from that which is bad, the Courts will make the distinction, for the . . . law . . . [divides] according to common reason; and having made that void that is against law, lets the rest stand." ' " (*Keene*, at pp. 320–321, fn. omitted; *Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83, 122 (*Armendariz*); see also *Birbrower, Montalbano, Condon & Frank v. Superior Court* (1998) 17 Cal.4th 119, 137–139.)

Case law suggests "[t]wo reasons for severing or restricting illegal terms rather than voiding the entire contract." (*Armendariz, supra,* 24 Cal.4th at p. 123.) "The first is to prevent parties from gaining undeserved benefit or suffering undeserved detriment as a result of voiding the entire agreement." (*Id.* at pp. 123–124; see, e.g., *Keene, supra,* 61 Cal.2d at pp. 320–321 [refusing to void transaction to buy coin-operated machines in its entirety simply because a small number of those machines were illegal " 'bingo-type' pinball machines"].) "Second, more generally, the doctrine of severance attempts to conserve a contractual relationship if to do so would not be condoning

20

an illegal scheme." (*Armendariz*, at p. 124; see, e.g., *Werner v. Knoll* (1948) 89 Cal.App.2d 474, 476–477 (*Werner*).)

Consistent with *Viking River*, we conclude ForwardLine is entitled to enforce the arbitration clause with respect to plaintiff's individual PAGA claim, and the limitation on the arbitrator's authority to preside over a representative action can be restricted in accordance with the severability principle codified in Civil Code section 1599. The arbitration clause plainly has a lawful purpose consistent with both the FAA and our state's public policy. (See, e.g., *Graham v. Scissor-Tail, Inc.* (1981) 28 Cal.3d 807, 821, 831 [recognizing there is a "strong public policy of this state in favor of resolving disputes by arbitration" and remanding for enforcement of arbitration agreement after voiding unconscionable provision providing for biased arbitrator].) Voiding the clause as it pertains to plaintiff's entire PAGA claim would have the effect of depriving ForwardLine of its right to contract for bilateral arbitration based on the mandatory joinder rule of *Iskanian* that *Viking River* declared preempted. (See *Viking River, supra,* 142 S.Ct. at p. 1924; cf. *Keene, supra,* 61 Cal.2d at pp. 320–321.) Critically, however, the clause is divisible inasmuch as it can be construed to refer to representative actions in the sense that plaintiff represents fellow aggrieved employees (i.e., nonindividual PAGA claims) while permitting the arbitrator to decide a representative action in the sense that plaintiff acts as an agent or proxy for the state (i.e., an individual PAGA claim). Severance is therefore appropriate. (See *Viking River,* at p. 1916 [discussing the "two distinct ways" the term " 'representative' " is used in reference to PAGA actions]; *Werner, supra,* 89 Cal.App.2d at pp. 476–477 [valid portion of exculpatory damages provision severed from

21

provisions that were invalid, even though invalid provisions were "not separately stated but [were] included within the single phrase 'any cause' "]; cf. *Armendariz, supra,* 24 Cal.4th at p. 124 ["If the central purpose of the contract is tainted with illegality, then the contract as a whole cannot be enforced"; however, "[i]f the illegality is collateral to the main purpose of the contract, and the illegal provision can be extirpated from the contract by means of severance or restriction, then such severance and restriction are appropriate."].)

## DISPOSITION

The order denying the motion to compel arbitration is reversed as to plaintiff's individual PAGA claim and affirmed in all other respects.  The parties shall bear their own costs.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


EGERTON, J.

We concur:



EDMON, P. J.



HEIDEL, J.*

---

\* Judge of the Los Angeles County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.